IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHIRLEY KNIGHT, Guardian ad Litem, )
for J.S., a minor, and MARLENE and )
HOMER FAGAN, )
                                        ) 2:08-cv-01903-GEB-EFB
        Plaintiffs, )
                                        ) <u>ORDER DENYING DEFENDANT'S</u>
    v. ) <u>MOTIONS TO EXCLUDE EVIDENCE</u>
                                        )
DEERE & COMPANY, )
                                          )
        Defendant. )
_____)

        Defendant Deere & Company ("Deere") has filed two evidentiary motions seeking to exclude certain evidence at trial in this products liability case.  While not labeled as such, Defendant's motions appear to be, and shall be construed as, motions in limine. Defendant first seeks an order precluding "[Plaintiffs] Homer and Marlene Fagan from introducing evidence regarding the condition of the brakes on the vehicle at issue in this action at the time of the alleged injury" due to Homer Fagan's alleged spoliation of evidence. Defendant also seeks to exclude "the testimony of Plaintiff's expert witness Russell E. Darnell on the grounds that [his opinions] . . . do[] not meet the standards of reliability required by Federal Rule of Evidence 702."  Plaintiffs oppose Defendant's motions.  A hearing was held on February 22, 2010.  For the reasons stated below, Defendant's motions in limine are DENIED.

**I. BACKGROUND**

        This case concerns a fatal accident involving a 1991 John Deere Model AMT 622 Utility Vehicle owned by Homer and Marlene Fagan

1

1  (the "Vehicle").  On September 3, 2006, Homer and Marlene Fagan were
2  using the Vehicle to lead a pony from their residence in Oak Run,
3  California, to the nearby home of Julie Stevens.  (Homer Fagan Depo.
4  43:25-44:13.)  Marlene Fagan was driving the Vehicle while Homer sat
5  on the tailgate, leading the pony.  (Traffic Collision Report 10.)
6  While in route to the Stevens' home, Marlene and Homer Fagan
7  encountered Julie Stevens and her daughter walking along the road.
8  (Id.)  Julie Stevens climbed into the passenger seat of the Vehicle
9  and Julie's daughter sat on the tailgate with Homer Fagan and they
10 then resumed riding toward the Stevens' home.  (Id.)  While traveling
11 downhill on Gale Lane, a private gravel road, the Vehicle's brakes
12 failed.  (Id.)  When Marlene Fagan tried to make a sharp left turn,
13 the Vehicle flipped, throwing Marlene Fagan, Julie Stevens and her
14 daughter to the ground.  (Id.)  Before the Vehicle flipped, Homer
15 Fagan jumped off the back.  (Id.)  Julie Stevens landed on an
16 outcropping of rocks, causing fatal injuries.  (Id.)  Marlene Fagan
17 was partially pinned under the Vehicle and Julie Stevens' daughter
18 sustained a laceration to her left elbow.  (Id.)

19         Three days after the accident, California Highway Patrol
20 Officer Glenn Revheim inspected the Vehicle, which was parked at the
21 Fagans' residence.  (Revheim Depo. 21:7-16.)  Homer Fagan was present
22 during Officer Revheim's inspection.  (Id. 25:2-5.)  Officer Revheim
23 detailed his findings in a Traffic Collision Report, stating:

> Upon removing the bed of the [V]ehicle, the brake inspection revealed the following:
> 1.) **Right Side Brake:** The right inner [brake] disc was dirty and corroded, lacking evidence of proper contact by the brake shoe.  Upon depressing the brake pedal and adding power to the rear axle, it was observed that the brake shoes failed to make contact with the disc and allowed the rear axle to rotate.

2

>  2.) **Left Side Brake:** The left side disc showed evidence of recent contact with both inner and outer brake shoe by the smooth, shiny, worn surface on both sides of the disc. There was a bent metal clip extending from the caliper, scraping the outer surface of the disc. Upon depressing the brake pedal and applying power to the rear axle, it was noted that the brake shoes would not apply enough pressure to the disc to prevent the rear axle from rotating. It appeared that the left side brake shoe was missing and the metal clip obviously had something to do with holding the brake shoe in place was now bent and scraping the surface of the disc.

(Traffic Collision Report 8.)  Officer Revheim concluded in his report:

> [that the] collision was caused by Party #1 (Marlene Fagan) attempting to negotiate a sharp left curve in the road at an unsafe speed, due to the mechanical failure of [the Vehicle's] left side disc brake, established by statements and inspection of the [V]ehicle's disc brakes . . . . [T]he brakes had apparently been operating with no apparent problems prior to the collision. It is highly unlikely that, had the brakes not been operational to some degree, Party #1 would not have been able to drive the [V]ehicle from her residence to the location of the collision. Party #1's residence is over one mile from the scene, much of which is traveling downhill. Based on inspection of the brakes, it was evident that they were not maintained as they should have been. This conclusion was reached by visual inspection of the right disc, which was caked with dirt/corrosion, and obviously had not been in contact with the brake shoe for some time. Essentially, it was determined that the [V]ehicle had been stopping with only the left side disc brake for sometime. It was this brake that failed and resulted in the collision.

(Id. 13.)

Homer Fagan gave deposition testimony on June 12, 2009, that after Officer Revheim's inspection was completed, he replaced the braking mechanisms in the Vehicle, which included removing the brake

3

1  discs and pads that were in the Vehicle at the time of the accident.
2  (Fagan Depo. 112:15-117:17.)  He placed the brake parts he removed on
3  a shelf behind his house.  (Id. 117:2-17.)  However, Homer Fagan no
4  longer has these parts and does not know what happened to them.  (Id.
5  117:18-118:1.)  The last time Homer Fagan saw the brake parts was
6  approximately six weeks after the accident.  (Id. 117:22-24.)  After
7  he made these repairs, Homer Fagan continued to use the Vehicle on his
8  property.  (Id. 33:9-12.)

9        In July 2008, Homer and Marlene Fagan and Shirley Knight,
10 the Guardian ad Litem for J.S., separately filed lawsuits against
11 Defendant related to the accident in California Superior Court for the
12 County of Shasta.  Defendant removed both actions to this federal
13 court, and the two cases were consolidated before the undersigned
14 judge.  Both the Fagans and J.S. allege products liability claims
15 against Defendant.  J.S. alleges the Vehicle's breaking system was
16 defective due to the position of the fluid reservoir in relation to
17 the brake pads and braking mechanism on the rear of the Vehicle and
18 the absence of a braking mechanism on the front of the Vehicle.  Homer
19 and Marlene Fagan similarly allege the Vehicle was "defective and
20 unsafe in manufacture and design in that a hydraulic cylinder was
21 located above the brake pads and braking mechanism on the passenger
22 rear axle."  Defendant disputes that the accident was caused by any
23 defect in the Vehicles's design and contends the accident was the
24 result of the Fagans' negligent maintenance of the Vehicle's brakes.

25       A representative of Defendant's inspected the Vehicle in
26 April 2009, and determined that the right side brakes were not
27 performing properly.  (Fagan Depo. 109:4-110:11.)  Homer Fagan then
28 took the Vehicle to a Deere dealership for maintenance in June 2009,

4

where it was inspected by Loren Schneider.  (Id. 110:16-22.) Schneider gave deposition testimony that he determined that the Vehicle's right side caliper was not working and he replaced the caliper and the right side brake pads.  (Schneider Depo. 22:18-25:1.) Schneider also testified that he noticed that the Vehicle had "a hydraulic leak on [the] ram" and that he "pointed it out to [Homer] Fagan when he picked . . . up [the Vehicle]" and "told him that [the leak] could cause a problem later down the road . . . ."  (Id. 27:6-20.)  Schneider further testified that he thought the leak was coming from the reservoir that holds hydraulic fluid and that it was "possible" that the reservoir "could leak onto the right rear brake." (Id. 28:9-14.)

### III. Defendant's Motion to Exclude Evidence Due to Spoliation

Defendant argues that "[t]he Fagans' failure to maintain the critical evidence of the brake pads that were on the [V]ehicle at the time of the accident" constitutes spoliation of evidence, and the Court should use its inherent authority to preclude the Fagans from "introducing evidence regarding the condition of the brakes at the time of the accident."  (Mot. to Exclude Evid. Based on Spoliation 2:24-26, 5:16-17.)  Homer and Marlene Fagan counter that they "had no pre-litigation duty to preserve the brakes."  (Opp'n to Mot. to Exclude Evid. Based on Spoliation 5:3.)  Plaintiff J.S. seeks to join in the Fagans' opposition to Defendant's motion and his request to join is granted.

#### A. Legal Standard

**1. Applicable Law**

The parties dispute whether state or federal law governs the spoliation issue in this case.  Defendant asserts federal law

controls.  Plaintiff rejoins that since jurisdiction is premised upon diversity, state law determines whether there has been spoliation but federal law governs the appropriate sanction.

"A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence.  Such power includes the power where appropriate to order the exclusion of certain evidence." Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993) (citing Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp., 982 F.2d 363 (9th Cir. 1992)).  When a federal court exercises its inherent power to sanction a party for failure to preserve evidence, federal law controls the inquiry.  See Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005) (stating that "federal law governs the imposition of sanctions for failure to preserve evidence in a diversity suit); King v. Illinois, 337 F.3d 550, 556 (concluding that "federal law governs" the "issue of spoliation"); Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (stating that "federal law of spoliation applies [in a diversity action] because . . . the power to sanction for spoliation derives from the inherent power of the court, not substantive law."); see also Glover, 6 F.3d at 1329-30 (assessing district court's spoliation sanction in a diversity action in light of federal spoliation standard); Erlandson v. Ford Motor Co., No. 08-CV-1137-BR, 2009 WL 3672898, at *3-7 (D. Or. Oct. 30, 2009) (applying federal law in a diversity action to determine whether sanctions for spoliation were warranted).  The cases relied upon by Plaintiffs do not suggest the contrary.

///
///

1  **2.   Spoliation**

2       "Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or *reasonably foreseeable litigation*." Silvestri, 271 F.3d at 590 (emphasis added).  A party "engage[s] in spoliation of [evidence] as a matter of law only if they had some notice that the [evidence was] potentially relevant to . . . litigation before [it was] destroyed."  United States v. Kitsap Physicians Service, 314 F.3d 995, 1001 (9th Cir. 2002).  "If a party breaches its duty to preserve evidence, the opposing party may move the court to sanction the party destroying evidence."  In re Napster, Inc. Copyright Litigation, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006) (citing Unigard, 982 F.2d at 365).

       "The duty to preserve material evidence arises not only during litigation but extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."  World Courier v. Barone, No. C 06-3072 TEH, 2007 WL 1119196, at *1 (N.D. Cal. Apr. 16, 2007) (quoting Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998)).  "Indeed, as soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action."  AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc., No. CIV S-00113 LKK/JFM, 2006 WL 2308442, at *4 (E.D. Cal. Aug. 9, 2006) (citing Nat'l Ass'n of Radiation Survivors v. Turnage, 115 F.R.D. 543, 556-57 (N.D. Cal. 1987)).  "The future litigation must be 'probable,' which has been held to mean 'more than a possibility."  Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.,

1  264 F.R.D. 517, 524 (N.D. Cal. 2009) (quoting <u>Hynix Semiconductor Inc.
2  v. Rambus Inc.</u>, 591 F. Supp. 2d 1038, 1061 (N.D. Cal. 2006)).
3       "District courts may impose sanctions against a party that
4  merely had notice that the destroyed evidence was potentially relevant
5  to litigation." <u>In re Napster</u>, 462 F. Supp. 2d at 1066; <u>see also</u>
6  <u>Glover</u>, 6 F.3d at 1329 (stating that "simple notice" that destroyed
7  evidence has "potential relevance to . . . litigation" is sufficient
8  to warrant spoliation sanction). "However, a party's degree of fault
9  in destroying evidence is relevant to what sanction, if any, is
10 imposed." <u>In re Napster</u>, 462 F. Supp. 2d at 1066-67 (citations
11 omitted).

**B. Discussion**

13      Defendant argues the Fagans' "failure to maintain . . . the
14 brake pads that were on the [V]ehicle at the time of the accident"
15 constitutes spoliation since "the Fagans had sufficient notice that
16 the brakes could be potentially relevant evidence in litigation
17 concerning [the] accident" and the "the failure to preserve the brake
18 components . . . prejudices [Defendant's] defense and compromises the
19 ability of th[e] Court to reach a correct resolution of the issues."
20 (Mot. to Exclude Evid. Based on Spoliation 5:16-6:11.) Plaintiff
21 counters that Homer Fagan "had no notice of any litigation until after
22 the brake parts disappeared" and therefore was under no duty to
23 preserve this evidence. (Opp'n to Motion to Exclude Evid. Based on
24 Spoliation 5:27-28.)
25      The parties dispute which brake pads remained on the Vehicle
26 after the accident and which were removed and subsequently lost by
27 Homer Fagan. Homer Fagan gave deposition testimony that after the
28 accident "[t]he right caliper had no [brake] pads in it" and on the

1  left side, there was only one brake pad where there should have been
2  two. (Fagan Depo. 112:15-18 and 114:3-115:7.)  Homer Fagan further
3  testified that he removed and replaced the two backing plates and sole
4  remaining brake pad from the left side of the Vehicle and placed them
5  on a shelf outside of his house. (Id. 117:9-17.)  This deposition
6  testimony conflicts with Officer Revheim's report and deposition
7  testimony which suggest that after the accident, it was the left side
8  brake pads that were missing while the right side brake pads remained
9  intact. (Traffic Collision Report 8-9; Revheim Depo. 30:9-31:7.)
10             At the February 22, 2010 hearing, Defendant's counsel
11 clarified that "the focus of [Defendant's] motion" is on the Fagans'
12 alleged spoliation of the brake pads from the right side of the
13 Vehicle. (Hearing Transcript 21:6-16.)  Defendant's counsel argued it
14 is the right side brake pads that Homer Fagan removed and replaced and
15 are critical to Plaintiffs' claims and Defendant's defense. (Id.)
16 Defendant's counsel addressed the conflict as follows:

> THE COURT: –  Homer Fagan says he never had those brake pads, the right side brake pads. How do you respond to that?
>
> MR. RYAN[,] [on behalf of Defendant]: . . .  The simple response is he's wrong. He's got the sides wrong. And the reason he's got the sides wrong is because both of the pads were not missing on the left. He was confused in his deposition when he said I removed and replaced a set of pads. And he's simply got the wrong side. We know that –- even their own expert concedes that, because we start with the notion that, really, the same question the Court asked me at the outset, which was what about the right and what about the left. Everyone except Mr. Fagan agrees that it was the right side where the brake pads were missing. That's agreed by all witnesses, including the plaintiff's own expert, that those – that Mr. Fagan is mistaken when he talks about it was the other way around, he never had the brake pads from the right side . . . . [T]here is consistent evidence throughout that shows that he has to be wrong. He

9

>                 says he has two brake pads that he removes, and
>                 that they are – mysteriously disappear after, he
>                 thinks, six weeks.

(Hearing Transcript 21:18-24:12.)

The evidentiary record in this case presents a factual dispute as to whether Homer Fagan removed, replaced, and lost the right or left side brake pads. In essence, Defendant's motion requests that the court resolve the factual dispute concerning which brake pads Homer Fagan removed, and then to sanction the Fagans for their spoliation of evidence. "However, a motion in limine should not be used to resolve factual disputes or weigh evidence." <u>Research Corp. Techs., Inc. v. Microsoft Corp.</u>, No. CV-01-658-TUC-RCJ, 2009 WL 2971755, at *1 (D. Ariz. Aug. 19, 2009). Therefore, whether Homer Fagan's conduct constitutes spoliation of evidence is not decided, and Defendant's motion is denied.

**IV. Defendant's Motion to Exclude The Testimony of Russell Darnell**

Defendant also seeks an order excluding the testimony of Plaintiff's expert witness, Russell Darnell, arguing his testimony does not satisfy the requirements of Federal Rule of Evidence 702. Defendant argues Darnell is not qualified to offer expert testimony; and alternatively, Darnell's testimony is inadmissible since his opinions are based solely on speculation and conjecture or are irrelevant. Plaintiff J.S. opposes Defendant's motion and Plaintiffs Homer and Marlene Fagan seek to join in J.S.'s opposition. The Fagans' request to join in J.S.'s opposition is granted.

**A. Federal Rule of Evidence 702**

"Rule 702 of the Federal Rules of Evidence allows for expert, opinion testimony by a witness qualified as an expert by

knowledge, skill, experience, training or education where the testimony will assist the trier of fact to understand the matters of scientific, technical, or other specialized knowledge." United States v. Reed, 575 F.3d 900, 922 (9th Cir. 2009) (quoting Fed. R. Evid. 702). The party offering the expert testimony bears the burden of demonstrating admissibility. Lust v. Merrell Dow Pharms. Inc., 89 F.3d 594, 598 (9th Cir. 1996) (stating that "[i]t is the proponent of the expert who has the burden of proving admissibility").

"The trial court, however, must be careful to avoid supplanting the adversary system or the role of the jury: vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Thompson v. Whirlpool Corp., No. C06-1804-JCC, 2008 WL 2063549, at *3 (W.D. Wash. May 13, 2008) (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 596 (1993) & Advisory Committee Notes to the 2000 Amendments to Rule 702 which state "rejection of expert testimony is the exception rather than the rule.").

### B. Qualification

Defendant argues Darnell is not sufficiently qualified to offer his opinions in this case because "he lacks academic and/or professional training . . . ." (Mot. 9:10-12.) Defendant attacks Darnell's education and work experience as follows:

> Although Darnell refers to himself as an 'engineer,' that is simply his personal assessment of his qualifications, as he is not licensed to provide services as an engineer in California, or anywhere else. Darnell's only academic credential pertaining to engineering is not an engineering degree at all, but rather a degree in managing engineering projects. The institution from which he

11

>                    obtained that degree, California Coast
>                    University, was not accredited to award such
>                    degrees at the time it was issued. In
>                    addition to a lack of academic and
>                    professional qualification, Darnell's work
>                    experience does not qualify him to offer his
>                    stated opinions regarding the design of the
>                    AMT 622. Darnell's report demonstrates that
>                    his primary work experience for the past
>                    twenty years has been offering expert
>                    opinions, particularly regarding accident
>                    reconstruction . . . .

(Mot. 9:10-12.)

Plaintiffs dispute Defendant's characterization of Darnell's qualifications and argue Darnell possesses the requisite knowledge, skill, expertise, training and education to offer his opinions as to the Vehicle's alleged design defects and their role in causing the accident. (Opp'n 8:25-28.)

Plaintiffs' opposition attaches a declaration from Darnell in which he avers he "was awarded a Bachelor of Science in Engineering in 1999, a Master of Science in Engineering Management in 2000, a Ph.D. in Engineering Management in 2003, and a Doctorate in Education in 2005, all from California Coast University in Santa Ana, California." (Darnell Decl. ¶ 2.) Darnell further declares that he has been employed by various companies as a "test engineer," and in this capacity has routinely tested "vehicle brakes and braking systems." (Id. ¶ 3.) Darnell also declares that he has "offered an expert opinion in over 200 jury trials in state, federal and international courts," and has specifically "offered an expert opinion in [six other cases] . . . regarding vehicle brakes, and 27 cases involving all-terrain vehicles." (Id. ¶ 6.)

Rule 702 "refers only to a witness qualified as an expert by knowledge, skill, experience, training, or education. No specific

credentials are mentioned. Moreover, . . . an expert need not have official credentials in the relevant subject matter to meet Rule 702's requirements." United States v. Smith, 520 F.3d 1097, 1105 (9th Cir. 2008) (citation omitted). "Because [Rule 702] contemplates a broad conception of expert qualifications, only a minimal foundation of knowledge, skill, and experience is required. A lack of particularized expertise goes to the weight of the testimony, not its admissibility." Allstate Ins. Co. v. Ford Motor Co., 2010 WL 1654145, at *3 (D. Ariz. Apr. 21, 2010) (quoting Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1015-1016 (9th Cir. 2004)) (emphasis in original).

Plaintiffs have demonstrated that Darnell is sufficiently qualified by his knowledge, skill, education, training and experience to offer his opinions on the Vehicle's alleged design defects. Therefore, Defendant's motion to exclude Darnell's testimony for lack of qualification is denied.

### B.  Assisting the Trier of Fact

Defendant also argues Darnell's opinions should be excluded because they are based on speculation and conjecture or are irrelevant. Plaintiffs rejoin that Darnell's opinions are relevant and are based on facts and data and are therefore admissible.

"The Federal Rules of Evidence allow expert testimony that will assist a trier of fact in understanding the evidence or in determining a fact in issue, so long as (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Boyd v. City and County of San Francisco, 576 F.3d 938, 945 (9th Cir. 2009)

(quoting Fed. R. Evid. 702). "Rule 702[,] [therefore,] embodies the twin concerns of reliability and helpfulness." <u>Stilwell v. Smith & Nephew, Inc.</u>, 482 F.3d 1187, 1192 (9th Cir. 2007) (quotations and citations omitted). "Whether testimony is helpful within the meaning of Rule 702 is in essence a relevancy inquiry." <u>Hemmings v. Tidyman's Inc.</u>, 285 F.3d 1174, 1184 (9th Cir. 2002). "The test for reliability, however, is not the correctness of the expert's conclusions but the soundness of his methodology. And, reliable testimony must nevertheless be helpful. A court may exclude testimony that falls short of achieving either end." <u>Stilwell</u>, 482 F.3d at 1192 (quotations and citations omitted).

In his expert report, Russell opines that the Vehicle has "several design defects," including:

> 10a- No braking mechanism was provided for the single front wheel. A front brake could have and would have prevented this accident.
> 10b- The hydraulic reservoir for the dump bed of the AMT 622 is mounted directly above the right rear brake assembly. The reservoir was leaking hydraulic fluid directly onto the brake pads. This leakage contaminated the right rear brake pad friction surfaces which rendered them inoperable. Due to the fact that the right rear pads were inoperable, the left side brakes had to work much harder, and in the end failed at the critical moment so that at least one of the pads on the left side fell out. When the pad fell out, Mrs. Fagan and her passenger were left with no brakes at all and no back-up system . . . .

(Darnell Expert Report 2-3.) Darnell further opines in the "conclusion" section of his report:

> 16- At the time of the manufacture of Mr. Fagan's AMT 622 in 1991, the off road industry had progressed to an industry norm of two wheels at the front end of ATV's and small utility vehicles such as the AMT. It has been conclusively demonstrated that an ATV or similar vehicle is substantially more stable with two wheels in the front steering

```
            position than with a single wheel in the front
            steering position.
            17- The additional manufacturing cost of supplying
            a front brake system on the AMT 622 would have been
            minimal.
```

(Id. 3.)

### 1. Darnell's Opinion that Hydraulic Fluid Caused the Right Brake to Fail

Defendant argues Darnell's opinion that a hydraulic fluid leak caused the right brake to fail is mere conjecture and should be excluded. Specifically, Defendant argues:

> There are only two witnesses who have testified from personal observation regarding the condition of the right rear brake after the accident: California Highway Patrol Officer Glenn Revheim and plaintiff Homer Fagan. Their testimony regarding the brakes conflicts, but neither is consistent with Darnell's opinion that the right brake failed to slow the [V]ehicle because its pads were covered with hydraulic fluid. Darnell's opinion as to the condition of the right brake at the time of the accident is unreliable conjecture - inconsistent with the evidence that the brake failed because it was not properly maintained - and should be excluded . . . . [Further,] Darnell's certainty that the brake pads were saturated at the time of the accident from hydraulic fluid is based upon what he claims he saw on a replacement set of pads when he inspected the [V]ehicle in November 2007, and the statements of the John Deere dealership mechanic who inspected the [V]ehicle in June 2009. Even if Darnell saw leaking hydraulic fluid on the brake pads in November 2007, it would not establish that there was fluid on them more than a year earlier when the accident occurred.

(Mot. to Exclude Expert Testimony 12:14-20, 13:13-17.)

Plaintiffs respond "Darnell reviewed [Officer] Revheim's report and deposition testimony, and photographs taken August 24, 2007, and believes the photographs taken after the accident clearly show the subject vehicle's right brake pads and the area around them were wet with hydraulic fluid. Darnell concluded the only source of

15

1  hydraulic fluid would come from a leak in the hydraulic fluid
2  reservoir due to the deterioration of the oils seals." (Opp'n to Mot.
3  to Exclude Expert 10:15-20.) Further, Darnell declares:

> In preparing the opinions [he] intend[s] to offer
> in this case, in addition to applying the
> engineering principles and methodology gained from
> [his] education and work experience, [he]
> thoroughly reviewed and considered the police
> report, No. 2006090009, generated by investigating
> California Highway Patrol Officer Glenn Revheim,
> the deposition testimony of Peter Haag, Michael
> Bedis, Homer Fagan, and Marlene Fagan.
> Additionally, [he] reviewed Chapters 2, 3, and 10
> of the Clymer Manual, the Operator's Manual for the
> European model of the Deere Gator Vehicle, Deere
> Technical Manuals TM1527 and TM1363, various Deere
> Safety Recall Notices, various Fact and
> Specification Sheets pertaining to the Deere Gator
> Series Utility Vehicles, Technical, Parts, and
> Operator's Manuals for the Deere AMT 622 and Gator
> Series Vehicles, as well as the photos taken by the
> California Highway Patrol of the accident scene.
> [He] [has] also thoroughly reviewed and considered
> the deposition transcripts of Officer Glenn Revheim
> and John Deere certified mechanic Loren Schneider,
> especially those portions addressing the condition
> of the right and left rear disk brakes on the
> vehicle at issue in this case three days after the
> accident, and the condition of the right brake pad
> and right brake caliper and hydraulic fluid
> reservoir leak noted by Loren Schneider in June
> 2009.

(Darnell Decl. ¶ 7.)

Defendant cites the Ninth Circuit's exclusion of expert testimony in <u>Guidroz-Brault v. Missouri Pac. R.R. Co.</u>, 254 F.3d 825, 830-31 (9th Cir. 2001) as support for its argument that Darnell's opinion should be excluded. In <u>Guidroz-Brault</u>, the Ninth Circuit upheld the trial court's exclusion of expert opinions that were based upon factual assumptions which had "no support in the physical facts as described by the reports and other evidence in the record." <u>Id.</u> at 831. However, Plaintiffs proffer evidence that Darnell has factual support for his opinion. Therefore, Defendant's arguments do not

"furnish an adequate basis for excluding [this] opinion." Primiano v. Cook, --- F.3d ----, 2010 WL 166030, at *6 (9th Cir. Apr. 27, 2010). Accordingly, Defendant's motion to exclude this opinion is denied.

**2.   Darnell's Opinion that the Inclusion of a Front Brake Would Have Prevented the Accident**

Defendant also argues Darnell's opinion that a front brake would have prevented the accident should be excluded since he "did not test whether a vehicle designed with such a front brake would have been able to stop the vehicle if that front brake had been subject to the same lack of maintenance as the existing rear brakes." (Mot. to Exclude Expert 15:5-13.) Plaintiffs argue "Darnell's conclusions are based upon test runs Darnell himself conducted at the site of the accident in August 2009 after a local mechanic was directed to install a front drum brake on the [Vehicle] . . . ." (Opp'n to Mot. to Exclude Expert 12:28-13:2.)

Darnell describes his "field test" of the Vehicle in his declaration as follows:

> My intent was to reconstruct the circumstances of the accident as nearly as possible by duplicating the load the accident [V]ehicle had at the time of the accident and to duplicate the speed of the [V]ehicle along the route to the accident. I placed cones at 62 feet, 170 feet, 313 feet, 356 feet apart along the accident route, beginning at the accident site and working my way backward. I noted the accident [V]ehicle picked up speed approximately 50-60 feet into the route, gradually attaining approximately 30 mph. Utilizing the modified front braking mechanism installed on the [V]ehicle for the purposes of the test, I noted the brake was able to sufficiently slow and stop the [V]ehicle as it approached the last left hand turn in the path leading to the accident site. The front brake demonstrated itself to be an effective secondary braking system that could operate as a "fail safe" braking system in the event the [V]ehicle's primary braking system failed, as it did on the date of the accident.

(Darnell Decl. ¶ 9.)

Since the condition of the brakes at the time of the accident is disputed, Defendant's motion to exclude this opinion on this ground is denied.

### 3. Darnell's Opinion that the Vehicle was Defective Because it Lacked a Second Front Wheel

Defendant lastly argues that Darnell's opinion that the lack of a second front wheel constitutes a design defect "should be excluded as not relevant to the determination of the ultimate issue of whether a defective design caused the fatality and injuries at issue" since this opinion conflicts with his deposition testimony, where Darnell states the accident would likely still have occurred even with a second front wheel. (Mot. to Exclude Expert 16:5-21.) Plaintiffs respond this opinion is relevant and admissible since Darnell may offer his opinion on "the interplay between the subject vehicle's compromised stability absent a second front wheel and the vehicle's failed braking system . . . ." (Opp'n to Mot. to Exclude Expert 14:27-15:2.)

Defendant's argument challenges Darnell's credibility rather than the relevance of his opinion. Therefore, this portion of Defendant's motion is denied.

Dated: May 11, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge